1
2
3          **UNITED STATES DISTRICT COURT**
4             **DISTRICT OF NEVADA**
5
6   PATRICK THOMAS,                          )
7                        Plaintiff,          )     Case No. 2:10-cv-00801-LDG-PAL
                                             )
8   vs.                                      )            **ORDER**
                                             )
9   STATE FARM MUTUAL AUTOMOBILE             )     (Emg. Mot. For Protective Order - Dkt. #24)
    INSURANCE COMPANY, *et al.,*             )
10                                           )
                         Defendants.         )
11  _____)

12          The court conducted a hearing on Defendant State Farm's Emergency Motion for Protective

13  Order (Dkt. #24) on November 16, 2010.  James Ream appeared on behalf of the Plaintiff.  Riley

14  Clayton and James Hartford appeared on behalf of the Defendant.  The court has considered the motion,

15  Plaintiff's opposition (Dkt. #25), Defendant's reply (Dkt. #29), and the arguments of counsel at the

16  hearing.

17          The Complaint in this case was filed in state court as was removed (Dkt. #1) to federal court

18  May 27, 2010.  It arises out of an accident that occurred June 28, 2008 in Las Vegas, Nevada.  Plaintiff

19  was involved in an accident with an uninsured driver and made a claim with State Farm for uninsured

20  motorist benefits approximately five months after the accident.  State Farm concluded that Plaintiff was

21  at fault for the accident and denied his claim.  On February 26, 2009, Plaintiff filed a breach of contract

22  lawsuit in state court which was placed in the court's arbitration program for cases having a potential

23  value of $50,000 or less.  The case went to arbitration.  The arbitrator found that Plaintiff was not liable

24  for the accident, placed all the fault on the adverse driver, and awarded Plaintiff UM policy limits of

25  $50,000 plus costs and fees.  State Farm paid the entire amount of the award.  Plaintiff then filed this

26  bad faith claim asserting State Farm's failure to investigate and evaluate the underlying automobile

27  accident and Plaintiff's UM claim forced him to file suit in state court.  Plaintiff seeks extra contractual

28  and punitive damages.

In the current motion, State Farm seeks a protective order prohibiting Plaintiff from obtaining discovery of other claims, lawsuits, accidents and claims decisions requested in a second set of interrogatories Plaintiff served upon State Farm for which responses were due on or before November 1, 2010.  The Motion for Protective Order was filed October 28, 2010 when counsel were unable to resolve their disputes in the meet-and-confer process.  State Farm seeks a protective order finding that it need not respond to Interrogatory No.s 15 through 24.  These interrogatories seek information about UM/UIM claims made in Nevada for motor vehicle accidents between January 1, 2005 and December 31, 2008, and between the period of January 1, 1990 and December 31, 1993.  Other interrogatories seek information about UM/UIM claims for these same periods nationwide.  Interrogatory No. 24 seeks information about State Farm's ACE Program.  State Farm asserts that these interrogatories are overly broad, unduly burdensome, and seek information "wholly irrelevant" to this case.  Some progress was made in the meet-and-confer sessions, and counsel for Plaintiff agreed to limit the information sought to the state of Nevada, and to define the term "denied" or "denial" for purposes of the interrogatories as a decision to decline UM/UIM benefits based on State Farm's determination that its insured was greater than fifty percent at fault for the accident.  However, counsel were unable to agree concerning information Plaintiff sought dating back to the 1990s and information Plaintiff sought concerning the percentage of denials before and after implementation of State Farm's ACE Program.

State Farm argues that information concerning other claims is not relevant to Plaintiff's claims as plead, and that it would be extremely costly and burdensome for State Farm to produce the information requested.  What is at issue in this case is whether Plaintiff's claim was handled reasonably, not how State Farm handled other UM/UIM claims during the 2005 to 2008 time period, and in the 1990s.  State Farm produced all of its claims handling guidelines and resources available to and used by its claim handlers in Nevada during the applicable time period, and has not objected to the depositions of the persons who handled Plaintiff's claim.  On October 23, 2010, Plaintiff took a five-hour deposition of the Nevada State Farm Claim Representative, Lindsay Ainsworth, who evaluated Plaintiff's claim and decided Plaintiff was at fault.  Plaintiff's counsel has also scheduled the depositions of other State Farm claims personnel who were involved in handling or supervising the claim.  Ms. Ainsworth was questioned concerning her training, and the facts and circumstances she

2

considered in determining Plaintiff was at fault in this accident, and therefore, not entitled to UM

benefits.  Counsel for Plaintiff will have the same opportunity to examine other State Farm personnel at

their depositions.  Under these circumstances, counsel for State Farm argues there is not a reasonable,

relevant or legitimate need for any discovery regarding the manner in which State Farm handled and/or

decided and/or litigated other claims.  The parties have successfully eliminated a number of claims by

stipulation, and as a result, Plaintiff claims State Farm committed bad faith by denying UM benefits

without a reasonable basis and knowingly or recklessly disregarded the fact that there was no

reasonable basis for denial.

Plaintiff opposes the motion asserting that the essence of this case is that State Farm deliberately

mishandled his claim to the extent that a reasonable insurer could not have acted in good faith in

denying his claim.  Plaintiff also claims that State Farm used biased and unlawful claims handling

practices in Nevada which were intended to increase the company's profits by restricting claims

payments.  Plaintiff asserts that State Farm's claims handling practices changed company-wide in the

1990s with implementation of the ACE (Advancing Claims Excellence) Program which was designed

by a consulting firm to audit State Farm to increase its profits.  Plaintiff suggests that the court should

hold a ruling in abeyance until Plaintiff's Third Set of Interrogatories to State Farm are answered.  This

new set of interrogatories is directed at UM/UIM claims in Nevada and ask for average paid loss and

percentage of files closed without payment.  If State Farm provides information that the average paid

loss has not decreased, and the percentage of files closed without payment has not increased, Plaintiff

will agree that State Farm does not need to answer Plaintiff's Second Set of Interrogatories.

Plaintiff believes he can show that State Farm's handling of his claim was "emblematic of a

state-wide strategy in Nevada whereby it holds its claims employees accountable to achieve results

which affect the profitability of the company."  Plaintiff's expert opines that State Farm has used ACE

and other programs "to stealthily manipulate the company culture so its claims activities do not meet

the company's own standards" or the law in the state of Nevada.  Plaintiff's Second and Third Sets of

Interrogatories are designed to find what economic gains in Nevada State Farm has realized since the

ACE Program first came online.  Plaintiff asserts that the information is needed to support a record for

punitive damages because the Supreme Court has held that repetitive action is more reprehensible than

an isolated incident.  The information sought in the Second Set of Interrogatories is relevant to find out whether State Farm denied legitimate claims and if so, how often.  If the statistical information Plaintiff seeks in the Third Set of Interrogatories do not support Plaintiff's claim that State Farm has paid less per claim and has closed more claims without payment, Plaintiff will concede this motion.

State Farm replies that Plaintiff has effectively conceded his Second Set of Interrogatories are improper.  State Farm also argues that Plaintiff has not cited a single case in his opposition to support discovery regarding UM/UIM claims and lawsuits in this case.  Plaintiff's opposition does not dispute that in Nevada, information concerning other UM/UIM claims in lawsuits is not needed to establish extra contractual liability.  Finally, State Farm argues that the statistical information regarding average paid losses and percentages of other claims paid on other UM/UIM claims sought in a Third Set of Interrogatories will not resolve this issues.  Plaintiff deposed State Farm's Claims Representative, Lindsay Ainsworth, the Adjuster who evaluated and denied Plaintiff's UM claim.  Ms. Ainsworth testified what she was taught concerning claims handling.

State Farm also disputes that the information Plaintiff seeks is necessary for assessing punitive damages.  The Nevada Supreme Court has adopted the federal court's "three guideposts" analysis for assessing punitive damages awards which examines: (1) the degree of reprehensibility of the Defendant's conduct; (2) the ratio of the punitive damages award to the actual harm suffered by Plaintiff; and (3) a comparison of the award to other civil or criminal penalties for comparable misconduct.  State Farm reiterates that what is at issue in this case is how State Farm handled the Plaintiff's claim.  Ms. Ainsworth testified at her deposition that she was not familiar with the term "average paid loss" and was pretty sure she had never seen anything from State Farm about the percentage of files closed without payment.

During oral argument, counsel for Plaintiff argued that the information sought in the Second Set of Interrogatories is needed in order to support an anticipated substantial punitive damages award in this case.  Specifically, Plaintiff relied on the Supreme Court's decision in *BMW of North America v. Gore*, 517 U.S. 559 (1996) which held that a $2,000.000.00 punitive damages award was grossly excessive and exceeded the constitutional limit applying the three guideposts for examining the reasonableness of the award.

Having reviewed and considered the matter, the court finds that the burden and expense of the discovery the Plaintiff seeks in this Second Set of Interrogatories outweighs its likely benefit taking into account the needs of the case, the amount in controversy, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  See Fed.R.Civ.P. 26(b)(2)(C).  Plaintiff has taken the deposition of the claims representative who evaluated and denied Plaintiff's claim, and has noticed the depositions of other claims personnel and supervisors.  State Farm has produced its claims handling practices and procedures information for UM/UIM claims in Nevada. Counsel for Plaintiff may inquire concerning State Farm's UM/UIM policies and procedures, whether they were followed in this case, what training and experience State Farm's personnel have in handling claims in compliance with Nevada law, and other issues relevant to his claims in this case.  By deposing the individuals who were involved in handling or evaluating a Plaintiff's claims, counsel for Plaintiff will be able to fully explore his theory that State Farm's handling of his claim was consistent with a state-wide strategy in Nevada to close cases without payment to increase the profitability of the company.  Accordingly,

**IT IS ORDERED** State Farm's Emergency Motion for Protective Order (Dkt. #24) is **GRANTED**.

Dated this 30th day of November, 2010.

Peggy A. Leen
United States Magistrate Judge